UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

DAVID FERNANDEZ,

                          Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.

**MEMORANDUM AND ORDER**

19-CV-2294 (LDH)

---

L<small>A</small>S<small>HANN</small> D<small>E</small>A<small>RCY</small> HALL, United States District Judge:

Plaintiff David Fernandez, proceeding pro se, appeals the denial by Defendant Commissioner of Social Security (the "Commissioner") of his application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). The Commissioner moves pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for judgment on the pleadings.

## BACKGROUND[1]

### I. Plaintiff's DIB Application

Plaintiff applied for DIB on July 14, 2016, alleging disability since November 12, 2015, due to back injury, metal-rod placement in his leg and arm, diabetes, asthma, high blood pressure, arthritis, and depression. (Tr. 145-46, 168, ECF No. 8.) After his application was denied, Plaintiff appeared with an attorney before an administrative law judge ("ALJ") on March 30, 2018. (Tr. 70-84, 26-69.) The ALJ heard testimony from Plaintiff and a vocational expert. (Tr. 26–69.) On May 2, 2018, the ALJ issued a decision finding that Plaintiff was not disabled through the date he was last insured: December 31, 2017. (Tr. 10-21.) On February 20, 2019,

---

[1] The following facts are taken from the administrative transcript, cited in this opinion as "Tr." (ECF No. 8.)

the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–6.)

## II. Non-Medical Evidence

Plaintiff was born on October 3, 1970. (Tr. 145.) Plaintiff had past relevant work as a delivery driver, auto parts worker, and newspaper delivery person. (Tr. 33-37; 57-58.) He suffered an accident in 1989 when he fell through a six story building to the basement. (*See, e.g.,* Tr. 228.) A function report, dated July 28, 2016, was completed by Sonia DeLeon, the mother of Plaintiff's two adult children and with whom Plaintiff resides, on behalf of Plaintiff. (Tr. 186-95.) She described that Plaintiff could shop in stores for up to 30 minutes, he went out twice a day for breakfast and dinner, and he took a walk every day. (Tr. 186, 189.) He could groom himself but did not do housework due to his asthma and pain. (Tr. 186, 189.) She further stated that he could not stand longer than fifteen minutes, walk more than one block at a time with his cane, sit for too long, or climb stairs without a lot of pain. (Tr. 191-92.) In a subsequent letter, DeLeon stated that Plaintiff could not sit or stand for long periods, walk long distances, and often needed assistance with bathing. (Tr. 228.)

At the ALJ hearing, Plaintiff testified that he had traveled to the hearing by train, which involved negotiating stairs and walking six blocks. (Tr. 32.) He testified about his 1989 accident, which required surgical placements of metal rods in arm and hip. (Tr. 40.) Plaintiff testified that pain prevented him from working as he could not sit for eight hours. (Tr. 47-48.) He testified that he had tingling and cramping in his fingers, but could pick change up off a table. (Tr. 54-55.) He also stated that that he utilized a cane when walking, which was prescribed by Nurse Practitioner ("NP") Lee. (Tr. 52.) He walked five to six minutes to get coffee every day, stopping half-way to use his inhaler, and the climbed the stairs to get into his home. (Tr. 44-46.)

2

Plaintiff stated that medication made him drowsy, and also reported extensive marijuana use. (Tr. 39-40.)

### III. Medical Evidence

Since the date of his disability onset, Plaintiff primarily sought treatment at Woodhull Medical Center (Woodhull). He presented as a new patient to NP Soyoung Lee on February 16, 2016. (Tr. 257.) His past medical history included a history of asthma (currently uncontrolled). (Tr. 257.) Plaintiff also reported that he began smoking marijuana at 16 and was currently smoking marijuana and tobacco on a daily basis. (Tr. 257.) Plaintiff had previously fractured several bones as a result of a fall from a six story building in 1989; metal rods were placed into his left arm and right hip. (Tr. 228, 257.) He complained of right hip and left arm pain as a result of that injury. (Tr. 257.) Plaintiff took Naproxen for pain. (Tr. 258.) His blood pressure was 111/73. (Tr. 258.) Plaintiff did not present with chest pain, palpitation, or shortness of breath. (Tr. 257-58.) His heart had normal sounds, with no murmur, gallop, thrill, or extremity edema appreciated. (Tr. 258.) His lungs were clear to auscultation, with no wheezes, rales, or rhonchi. (*Id.*) He was not in any respiratory distress. (*Id.*) From a musculoskeletal standpoint, Plaintiff had more than full (+5/5) muscle strength, normal gait, full range of spinal and extremity motion, and negative straight leg raising. (Id.) Neurologically, he was grossly intact. (*Id.*) NP Lee diagnosed: moderate persistent asthma, uncomplicated, for which Singulair was recommended, and right hip and left arm pain, for which Plaintiff was to continue taking Naproxen and applying warm compresses. (Tr. 258-59.) NP Lee discussed the importance of healthy eating and exercise with Plaintiff. (Tr. 259.)

Plaintiff was next seen by orthopedist Vladimir Tress, M.D., on March 7, 2016, regarding his limb and low back pain. (Tr. 260.) On examination, Plaintiff's blood pressure was 148/80. (Tr. 260.) A review of systems was negative for chest pain and shortness of breath. (Tr. 261.)

Dr. Tress observed that Plaintiff was in no acute or apparent distress, with stable vital signs, and was oriented. (*Id.*) Mental status was normal. (*Id.*) Plaintiff had normal movement, gait, toe and heel-walking, and general strength. (*Id.*) He could get out of a chair without difficulty. (*Id.*) Examination of the lumbar spine revealed: full range of motion and normal alignment without muscle spasm; and lower back tenderness upon palpation of the L4-L5 and L5-S1 discs. (*Id.*) Straight leg raising was negative bilaterally. (Tr. 262.) A neurological examination revealed normal motor function, sensation, and deep tendon reflexes. (*Id.*) Dr. Tress also reviewed x-rays of the left arm and right hip. (*Id.*) Vascular and lower extremity examinations were unremarkable. (*Id.*) Dr. Tress diagnosed Plaintiff with chronic low back pain. (*Id.*) He referred Plaintiff for pain management and recommended over-the-counter pain medication on an as-needed basis. (*Id.*)

On March 15, 2016, NP Lee's examination findings and diagnosis were mostly unchanged from February. (Tr. 264-66.) Plaintiff was prescribed Metformin for type 2 diabetes mellitus, for which life-style modifications and consultation with a diabetic nurse and nutritionist were also recommended. (Tr. 265-266.) For hyperlipidemia, Plaintiff was prescribed Lipitor as life-style modifications. (*Id.*) His asthma was determined to be "[m]ild intermittent," with triggers of weather and cold air. (Tr. 266.) Plaintiff was continue Singulair and Albuterol inhaler for asthma. (Tr. 265-66.)

Plaintiff returned to Woodhull on April 27, 2016, when he was seen by NP Chioma Onyemechi Chilaka for complaints of right lower quadrant abdominal pain radiating to his right flank for two weeks. (Tr. 267-68.) His abdomen was soft, and not tender or distended. (Tr. 269.) Plaintiff's blood pressure was 141/85. (Tr. 268.) Plaintiff was prescribed Lisinopril and aspirin for hypertension and to improve nutritional habits and exercise if tolerated. (Tr. 269.)

4

Plaintiff was also screened for depression, and his score suggested moderate depression. (Tr. 267.)

On June 11, 2016, Plaintiff saw NP Lee. (Tr. 271-275.) A depression screen suggested moderate depression. (Tr. 271; *repeated* 320-323.) Plaintiff stated that he was depressed "due to medical issue [sic]" and declined formal mental health treatment. (Tr. 273.) NP Lee noted that Plaintiff's blood pressure was 110/67, and his diabetes and hyperlipidemia had improved with treatment and life-style modifications. (Tr. 274; *see also* 322.) His A1c levels had improved from 11.3 to 7.6%. (Tr. 274.) His other pulmonary, musculoskeletal and neurological exams showed no change from previous normal findings. (Tr. 273.) NP Lee diagnosed Plaintiff with diabetes, pain in unspecified limb, hypertension, low back pain, and asthma classified as mild and intermittent. (Tr. 274-75.) Plaintiff signed a self-management goal, indicating that he would spend at least 30 minutes walking five times a week. (Tr. 429.) Additionally, an "Ambulatory Care Adult Fall Screening/Assessment" dated June 11, 2016, revealed that Plaintiff used no mobility device, such as a cane, and had not fallen in the last six months. (Tr. 430.)

NP Agnes Toussaint evaluated Plaintiff for pain management on June 29, 2016. (Tr. 276-87; *repeated at* 346-57, 361-62.) Plaintiff reported that his pain was 8/10 and exacerbated by sitting. (Tr. 348.) To-date, Plaintiff's pain had previously been treated with medication without side effects. (Tr. 276-77, 279 (no past physical therapy, chiropractic care, injections, or surgery for musculoskeletal pain), 280 (no side effects).) Plaintiff stated that he had smoked marijuana four-to-five times per day for the last 25 years. (Tr. 281.) He complained of extremity numbness and weakness, but no vision changes or dizziness. (Tr. 281-82.) His right hip joint was tender. (Tr. 283.) Furthermore, the lumbar spine demonstrated decreased range of motion and tender paraspinal muscles with spasm. (Tr. 285-86.) Otherwise, his extremities were

5

within normal limits, with equal and full (5/5) strength and ranges of motion, and no atrophy, swelling, redness, nodules, tender points, or tender joints. (Tr. 282-83.) Plaintiff had normal gait, symmetrical reflexes throughout, and no upper extremity sensory deficit to pinprick/touch; sensation was decreased only in the soles of the feet. (Tr. 284.) Straight leg raising was negative, as was Patrick's test for hip pathology. (Tr. 286.) NP Toussaint diagnosed intervertebral disc disease of the lumbosacral spine with radiculopathy, myalgia, and right hip pain. (*Id.*) The plan was compliant with medication, i.e., Mobic, Robaxin, and Gabapentin. (Tr. 286, 287; see 358-60.) NP Toussaint's examination findings, diagnoses, and recommended treatment remained essentially unchanged upon examination on August 24. (*See* Tr. 366-81.)

At an August 24, 2016 pain assessment by Josephine Pouchet, R.N., Plaintiff described having lower back pain radiating to the right thigh. (Tr. 365.) Ms. Pouchet recommended that Plaintiff avoid excessive lifting, take rest periods between activity, and continue medication. (*Id.*)

Ram Ravi, M.D., a specialist in occupational medicine, consultatively examined Plaintiff on August 29, 2016. (Tr. 309-17.) On examination, Plaintiff had a moderately antalgic gait when not using a cane, was unable to walk on his heels and toes, and could squat 20% of maximum. (Tr. 311.) Dr. Ravi assessed that the cane was "medically necessary." (*Id.*) Plaintiff said it was prescribed by a doctor, and he always used it to stand, and for pain, weight-bearing, and balance. (*Id.*) He had a normal stance, needed no help changing for the examination or getting on and off the examining table; he could rise from a chair without difficulty. (*Id.*) Plaintiff's eye examinations were unremarkable. (*Id.*) He had 20/20 uncorrected vision in both eyes. (*Id.*) His lungs were clear to auscultation with normal percussion, diaphragmatic motion, and no significant chest wall abnormality. (*Id.*) Plaintiff's heart had regular rhythm without

6

murmur. (*Id.*) He had a full range of cervical spine, upper extremity, and ankle motion. (Tr. 311-12.) A reduced range of lumbosacral, hip, and knee motion was noted. (Tr. 311-12.) Straight leg raising was negative bilaterally. (Tr. 312.) Plaintiff's joints were stable and nontender, with no redness, heat, swelling, or effusion. (*Id.*) Neurologically, he had physiological and equal deep tendon reflexes, no sensory deficit, and full (5/5) strength in the upper and lower extremities. (*Id.*) No edema or muscle atrophy was evident, and extremity pulses were physiologic and equal. (*Id.*) Plaintiff's hand and finger dexterity was intact. (*Id.*) Grip strength was full. (*Id.*) Lumbar x-rays showed straightening. (Tr. 312, 314.) Pulmonary function testing revealed mild-to-moderate reduction in respiratory function. (Tr. 312, 315-17.) Dr. Ravi diagnosed back and right hip pain; hypertension; diabetes; diabetic neuropathy; and asthma. (Tr. 312.) He opined that Plaintiff had no limitation with his ability to sit. (Tr. 313.) He had moderate limitations with his abilities to stand, walk, bend, push, pull, lift, and carry. (*Id.*) Dr. Ravi wrote that Plaintiff should avoid squatting due to his back pain, left forearm pain, and right hip pain as demonstrated on examination, as well as driving due to his history of diabetic neuropathy. (*Id.*) Due to his history of asthma, Plaintiff should also avoid smoke, dust, and other respiratory irritants/triggers. (*Id.*)

Plaintiff returned to Woodhull on November 1, 2016. (Tr. 381-400.) In a depression self-assessment, Plaintiff had moderately severe depression. (Tr. 382.) While he denied suicidal and homicidal ideations, Plaintiff did request to speak with a social worker for his depression. (Tr. 388.) From a physiological standpoint, no major changes were reported, except that his A1c levels had improved from 7.6 to 6.9%. (Tr. 386.)

On November 30, 2016, Plaintiff saw NP Toussaint at pain management. (Tr. 409-27.) Plaintiff reported no side effects to his medications, other than that Gabapentin made him

7

"glittery," which the Court notes may be a typo of "jittery." (Tr. 414.)  Plaintiff reported having low back pain radiating to the right leg that was exacerbated by sitting and tingling and numbness in the toes of both feet. (Tr. 411.)

At a December 8, 2017 diabetic eye examination at Woodhull, Plaintiff was assessed with mild hypertensive retinopathy, dry eye syndrome, and presbyopia in both eyes; there was no diabetic retinopathy. (Tr. 446-48.) The clinical findings were largely normal, and the ophthalmologist recommended that Plaintiff use artificial tears up to four times per day and apply a warm compress twice a day. (Tr. 446-48.)

Plaintiff saw NP Lee on January 17, 2018. (Tr. 451-68.) He reported that he was eating out more frequently and that his asthma was stable. (Tr. 454-55.) His A1c level had improved from 6.9 to 6.8%. (Tr. 456.) Plaintiff was given a referral to podiatry for possible diabetic neuropathy in his feet. (*Id*.) A self-assessed depression screen at Woodhull suggested severe depression. (Tr. 450.) Plaintiff denied suicidal and homicidal ideations, and stated that his depression was the result of unemployment for two years and being dependent financially on his ex-wife. (*Id.*) Treatment notes states that "Patient will get referral for Social Worker for depression[.]" (*Id*.)

Furthermore, on January 17, 2018, NP Lee completed a medical source statement questionnaire. (Tr. 437-39.) She stated that Plaintiff had asthma daily, and his A1c level was not where it should be. (Tr. 437.)  NP Lee checked off that Plaintiff's symptoms "often" interfered with attention and concentration required to complete tasks. (*Id*.) He had dizziness and drowsiness due to "large amounts of medication" he consumed daily. (Tr. 437, 438.) He needed to lie down four or more times per day. (Tr. 437.) Ms. Lee opined that Plaintiff had difficulty sitting, standing, and walking; he could perform these activities up to fifteen minutes at

8

one time, for a total of one hour each. (*Id.*) He required a job that allowed changing positions at will from standing, sitting, or walking. (*Id.*) He needed unscheduled breaks during a normal workday every one-to-two hours for no less than 35 to 45 minutes. (*Id.*) NP Lee opined that Plaintiff could: occasionally lift and carry less than ten pounds; never balance, stoop, kneel, or crouch; use his right hand, fingers, and arm 5% of the time; and never use his left hand, fingers, and arm. (Tr. 438.) He would be absent more than four times a month. (*Id.*) According to NP Lee, her opined restrictions and limitations existed prior to when she started treating Plaintiff on May 26, 2016. (Tr. 439.)

On January 24, 2018, NP Toussaint also completed a questionnaire. (Tr. 440-42.) She stated she had seen Plaintiff for intervertebral disc disease of the lumbosacral spine with radiculopathy in the pain clinic beginning May 26, 2016, but had not seen him since September 20, 2017. (Tr. 440.) The answers were substantially similar to those of NP Lee. Difference included that NP Toussaint opined that Plaintiff needed to elevate his legs above waist level four times a day, and could walk two blocks without restriction. (Tr. 440.)

## STANDARD OF REVIEW

Under the Act, a disability claimant may seek judicial review of the Commissioner's decision to deny his application for benefits. 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Felder v. Astrue*, No. 10-CV-5747, 2012 WL 3993594, at *8 (E.D.N.Y. Sept. 11, 2012). In conducting such a review, the Court is tasked only with determining whether the Commissioner's decision is based upon correct legal standards and supported by substantial evidence. 42 U.S.C. § 405(g); *see also Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)). The substantial-evidence standard does not require that the Commissioner's decision be supported by a preponderance of the evidence. *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982) ("[A] factual issue in a benefits proceeding need not

9

be resolved in accordance with the preponderance of the evidence . . . ."). Instead, the Commissioner's decision need only be supported by "more than a mere scintilla" of evidence and by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pollard v. Halter*, 377 F.3d 183, 188 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

In deciding whether substantial evidence supports the Commissioner's findings, a court must examine the entire record and consider all evidence that could either support or contradict the Commissioner's determination. *See Jones ex rel. T.J. v. Astrue*, No. 07-cv-4886, 2010 WL 1049283, at *4 (E.D.N.Y. Mar. 17, 2010) (citing *Snell v. Apfel*, 171 F.3d 128, 132 (2d Cir. 1999)), *aff'd sub nom.*, *Jones ex rel. Jones v. Comm'r of Soc. Sec.*, 432 F. App'x 23 (2d Cir. 2011) (summary order). Still, a court must defer to the Commissioner's conclusions regarding the weight of conflicting evidence. *See Cage v. Comm'r of Social Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (citing *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998)). If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed. *See Ortiz v. Comm'r of Soc. Sec.*, No. 15-CV-3966, 2016 WL 3264162, at *3 (E.D.N.Y. June 14, 2016) (citing 42 U.S.C. § 405(g)). Indeed, if supported by substantial evidence, the Commissioner's findings must be sustained, even if substantial evidence could support a contrary conclusion or where a court's independent analysis might differ from the Commissioner's. *See Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982)); *Anderson v. Sullivan*, 725 F. Supp. 704, 706 (W.D.N.Y. 1989); *Spena v. Heckler*, 587 F. Supp. 1279, 1282 (S.D.N.Y. 1984).

Where there is testimony from a treating physician, SSA regulations and the Second Circuit require that an ALJ follow certain proscribed steps in determining the appropriate weight to assign a treating physician's opinion.

*First*, "the ALJ must decide whether the opinion is entitled to controlling weight. The opinion of a claimant's treating physician as to the nature and severity of an impairment is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019) (citing *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal quotation marks and modifications omitted).

*Second*, if the ALJ decides the opinion is not entitled to controlling weight, it must determine how much weight, if any, to give it, explicitly considering the so-called "Burgess Factors": "(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella*, 925 F.3d at 95-96 (internal citations and modifications omitted). At both steps, "the ALJ must give good reasons in its notice of determination or decision for the weight it gives the treating source's medical opinion." *Id.* at 96 (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

Even where the ALJ has failed to "explicitly apply the Burgess Factors," the Court can still affirm the ALJ's decision if "a searching review of the record assures [the Court] that the that the substance of the treating physician rule was not traversed." *Estrella*, 925 F.3d at 96. In other words, the Court looks to "whether the record otherwise provides good reasons for assigning little weight to the [treating physician's] opinion." *Id.*

11

## DISCUSSION

To be eligible for disability benefits under 42 U.S.C. § 423, a claimant must establish his "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months," and the impairment must be of "such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A); *see also Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998). Additionally, "an applicant must be 'insured for disability insurance benefits'" at the time of his disability onset. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Arnone v. Bowen*, 882 F.2d 34, 37 (2d Cir. 1989); 42 U.S.C. §§ 423(a)(1)(A), 423(c)(1)).

The Commissioner's regulations prescribe the following five-step framework for evaluating disability claims:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Commissioner will consider him per se disabled. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.

*Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citation and internal modifications omitted); *see also* 20 C.F.R. §§ 404.1520(a), 416.920(a).

**I.      Substantial Evidence Supports the ALJ's Findings With Respect To His Physical Limitations**

At step one, the ALJ correctly determined that Plaintiff had not engaged in substantial gainful activity between his alleged disability-onset date of November 12, 2015, and the date he was last insured, December 31, 2017. (Tr. 12.) Specifically, while Plaintiff testified that he stopped working in January 2016, (Tr. 40-41), the ALJ found that he had collected unemployment in the fourth quarter of 2015, and thus found that he had not worked at substantial gainful activity levels since the alleged onset date of disability. (Tr. 12.)

At step two, the ALJ's determination that, through the date he was last insured, Plaintiff had the severe impairments of degenerative changes of the lumbar spine with radiculopathy, myalgia, right hip impairment, status post-surgery, arm impairment, status post-surgery, hypertension, asthma, obesity, and hyperlipidermia is supported by the record. (Tr. 12.) The ALJ's finding that Plaintiff's GERD, dry eye syndrome, presbyopia, and mild hypertensive retinopathy are not severe impairments is also supported by the record. (Tr. 13.)

At step three, the ALJ determined that, through the date Plaintiff was last insured, his impairments, alone or in combination, did not meet or medically exceed the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 21.) Specifically, the ALJ correctly found that Plaintiff did not meet the criteria of Listing 1.02 (major dysfunction of a joint), 1.04 (disorders of the spine), 3.00 (respiratory disorders), 4.00H (hypertension), and 9.00B(5) (diabetes). (Tr. 14-15.) Additionally, the ALJ properly considered whether Plaintiff's obesity under Social Security Ruling (SSR) 02-1p, alone or in combination with another medically determinable impairment, significantly limits an individual's physical or mental ability to do basic work activities. (Tr. 15 (citing SSR 01-1p).)

At step four, the ALJ's determination that Plaintiff had the residual functional capacity (RFC) to perform sedentary work as modified by the ALJ is substantially supported by the record regarding his physical ailments. (Tr. 16.) Specifically, the ALJ found that Plaintiff be required the use of a cane when standing or walking; Plaintiff could occasionally balance, stoop, kneel, crouch, and climb ramps and stairs; he could not crawl, climb ladders or scaffolds; he could not work around smoke, dust, or other respiratory irritants; and he was limited to jobs that required the ability to understand, remember and carry out simple, routine, and repetitive tasks. (Tr. 16.)

In determining this RFC, the ALJ gave "great weight" to the opinion of consultative examiner, Dr Ravi, limited weight to the opinion of treating NP Lee, and little weight to treating NP Toussaint. (Tr. 18-19.) Plaintiff argues that the ALJ erred in assigning limited and little weight to Plaintiff's treating NPs. (Aff. David Fernandez in Opp. Def's Mot. J. Plead. ("Fernandez Aff.") ¶¶ 22-24, ECF No. 16.) Plaintiff is wrong.

To start, "a nurse practitioner is not an 'acceptable medical source' whose opinion is eligible for 'controlling weight'" under the treating physician rule. *Monette v. Colvin*, 654 F. App'x 516, 518 (2d Cir. 2016). Nevertheless, NP Lee and Toussaint's opinion were "considered . . . and the weight attributed to them was supported by the applicable regulatory factors." *See id.*; *see* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). More specifically, the ALJ conducted a searching review of the record and found that the NPs restrictive functional assessments were inconsistent with the NPs' own treatment notes which consistently found normal strength and gait, negative straight leg raising and normal range of motion. (Tr. 17-18; *see* Tr. 258, 264-65, 273, 282-86, 385, 415-20, 455.) The ALJ also found

14

that the NPs' opinions were inconsistent with the physical examination conducted by Dr. Tress, the orthopedist who found that Plaintiff had normal movement, gait, toe and heel-walking, and general strength, and he could get out of a chair without difficulty. (Tr. 261.) Furthermore, Dr. Tress' examination of the lumbar spine revealed full range of motion and normal alignment without muscle spasm in the lumbar spine and the neurological examination revealed normal motor function, sensation, and deep tendon reflexes. (*Id.*) The only issue Dr. Tress observed was lower back tenderness upon palpation of the L4-L5 and L5-S1 discs. (*Id.*) Lastly, Plaintiff's pain was controlled with medication. (Tr. 286, 287.) Despite these largely normal findings in treatment, NP Toussaint opined that Plaintiff could only sit for 10 minutes, stand for 5 minutes or walk for 5 minutes at a time while NP Lee stated that Plaintiff could sit, stand or walk for 15 minutes at time. (Tr. 437.) Accordingly, the ALJ properly assigned Ms. Toussaint's opinion little weight and NP Lee's opinion limited weight. (Tr. 18.)

Conversely, the ALJ properly gave great weight to consultative examiner Dr. Ravi's opinion, because it was supported by a detailed examination and is consistent with the medical evidence in the record. *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). For example, Dr. Ravi's clinical observations—including normal stance, nearly full range of extremity movement, negative straight leg raising, and normal neurological findings— were largely the same as NPs Lee and Toussaint. (Tr. 311-312.) Furthermore, Dr. Ravi's consultative opinion that Plaintiff had "moderate limitation standing, walking, bending, pushing, pulling, lifting, and carrying," (Tr. 313), was not vague as it was supported both by specific medical findings in the opinion and other medical evidence in the record. *See, e.g., Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013) (upholding ALJ's RFC that was

supported by a medical opinion that described a condition as "mild to moderate" because it was couple with other clarifying information in the opinion and supported by other medical evidence in the record).

Lastly, in crafting the RFC, the ALJ considered Plaintiff's subjective complaints. "When determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal citations omitted). Here, the ALJ determined that not all of Plaintiff's complaints—including need for a cane, drowsiness as a symptom of his medication, inability to sit for eight hours a day, and nerve pain in his fingers—were consistent with the record as a whole. (Tr. 19.) For example, Plaintiff stated that he walked with a limp for five years before being prescribed a cane. (Tr. 52.) However, clinical records consistently noted that he ambulated with a normal gait. (Tr. 258, 261, 265, 273, 284, 385, 455.) And a June 2016 ambulatory assessment indicated that Plaintiff did not use any mobility device, including a cane. (Tr. 430.) Nevertheless, the ALJ still took into account Plaintiff's subjective complaints and testimony in crafting an RFC, in that he noted that Plaintiff requires a cane. (Tr. 16.)

At step five, the ALJ accurately presented Plaintiff's RFC and vocation profile in a hypothetical to the Vocational Expert, who identified work that Plaintiff could perform in the national economy. (Tr. 58-60.); *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) ("An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as there is substantial record evidence to support the assumption[s] upon which the vocational expert based

16

his opinion, and accurately reflect the limitations and capabilities of the claimant involved." (internal quotations and citations omitted)).

## II. Substantial Evidence Does Not Support ALJ's Findings With Respect to Plaintiff's Depression

The ALJ erred in finding that Plaintiff's depression is not a severe impairment under the second step of the analysis. (Tr. 13-14.) Specifically, the ALJ found that Dr. Tress, the consultative examiner, observed that Plaintiff exhibited normal speech, normal affect, and a pleasant and cooperative personality in March 2016. (Tr. 13.) The ALJ did note that Plaintiff reported symptoms of depression in June 2016 and November 2016 and severe depression in January 2017. (Tr. 13; *see also* Tr. 267 (moderate depression score); Tr. 382 (moderate depression score); Tr. 450 (severe depression score).) Furthermore, the ALJ specifically observed that no mental status examination was performed in any of the three medical appointments where Plaintiff reported symptoms of depression. (Tr. 13.) Nevertheless, after considering each of the "Paragraph B" criteria the ALJ found that there was no objective evidence in the record to support a finding that Plaintiff's depression was a "severe" impairment. (Tr. 13-14.)

"The ALJ, unlike a judge in a trial, must [] affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Butts v. Barnhart*, 388 F.3d 377, 386 (2d Cir. 2004), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005). Where, as here, there are gaps in the administrative record, remand is appropriate for the Commissioner to further develop the evidence. *Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999) ("Where there are gaps in the administrative record, remand to the Commissioner for further development of the evidence is in order." (internal citation omitted)). Here, the ALJ specifically identified that there was no mental status examination performed at any of the appointments where Plaintiff's

17

self-assessment indicated a moderate or severe depression score. Nor was there any consultative examiner who focused, in any meaningful way, on Plaintiff's mental health. Dr. Tress, the consultative examiner who provided a "normal" mental assessment, is an orthopedist. (Tr. 261.) Accordingly, the ALJ evaluated the "objective evidence" from an incomplete record. As there was a clear gap in the record as to Plaintiff's mental health status, remand on this issue is appropriate.

The Commissioner argues that the ALJ's findings as to Plaintiff's depression are further supported by the fact that Plaintiff declined mental health treatment despite mental health screenings reflecting moderate depression. (Mem. L. Supp. Def.'s Cross-Mot. J. Plead. Opp. Pl.'s Mot. J. Plead. 6, ECF No. 17.) This Court, like others in this circuit, resoundingly rejects this argument. *See Day v. Astrue,* No. 07 CV 157, 2008 WL 63285, at *5 n. 7 (E.D.N.Y. Jan. 3, 2008) ("It is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation."); *McDowell v. Colvin*, No. 11-CV-1132 NAM/VEB, 2013 WL 1337152, at *13 (N.D.N.Y. Mar. 11, 2013) (rejecting any argument that failure to seek treatment on a consistent basis for depression can be used to question the severity of depression), *report and recommendation adopted*, No. 5:11-CV-1132 NAM/VEB, 2013 WL 1337131 (N.D.N.Y. Mar. 29, 2013). While it may be appropriate in some circumstances to deem a plaintiff less credible for failing to seek medical treatment, "faulting a person with diagnosed mental illness for failing to pursue mental health treatment," would be, at best, a "questionable practice." *Duffy v. Comm'r of Soc. Sec.*, No. 17CV3560GHWRWL, 2018 WL 4376414, at *20 (S.D.N.Y. Aug. 24, 2018), *report and recommendation adopted*, No. 1:17-CV-3560-GHW, 2018 WL 4373997 (S.D.N.Y. Sept. 13, 2018). On remand, the ALJ must develop the record as to Plaintiff's depression.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion is GRANTED in part and DENIED in part, and the Commissioner's cross-motion is DENIED in part and GRANTED in part. Plaintiff's motion is DENIED with respect to the ALJ's findings as to his physical impairments. Plaintiff's motion is GRANTED with respect to the ALJ's findings related to his depression. The case is remanded for the ALJ to fill the gap in the record regarding Plaintiff's mental health, to make a determination as to severity of Plaintiff's depression, and to determine whether any change to the severity of Plaintiff's depression at step two changes the ALJ's findings with respect to the RFC or Plaintiff's disability status.

SO ORDERED.

Dated: Brooklyn, New York  /s/ LDH
      November 16, 2020  L<small>A</small>SHANN D<small>E</small>ARCY HALL
      United States District Judge